

**SO ORDERED,**

Judge Edward Ellington
United States Bankruptcy Judge
Date Signed: May 1, 2017

**The Order of the Court is set forth below. The docket reflects the date entered.**

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | **CHAPTER 13** |
| **WILLIAM S. ROBERTS**[1] | **CASE NO. 0306146EE** |
| **SARA A. ROBERTS** | |

| | |
|---|---|
| Hon. Jeffery P. Reynolds | Attorneys for Chapter 13 Trustee |
| jeff@jprpa.com | |
| Hon. Carson H. Thurman | |
| carson@jprpa.com | |
| 200 South Lamar Street, Suite 1050-S | |
| Jackson, MS 39201 | |
| | |
| Hon. John H. Dollarhide | Attorneys for Patrick C. Malouf and |
| john.dollarhide@butlersnow.com | Porter & Malouf, P.A. |
| Hon. J. Mitchell Carrington | |
| mitch.carrington@butlersnow.com | |
| Post Office Box 6010 | |
| Ridgeland, MS 39157 | |

---

[1]Upon information and belief, William S. Roberts died in 2011.  Pursuant to Federal Rule of Bankruptcy Procedure 1016, "if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred." Fed. R. Bankr. P. 1016.

Hon. James E. Renfroe                                            Attorney for Debtors
jrenfroe@mslawfirm.biz
648 Lakeland East, Suite A
Flowood, MS 39232

Mrs. Sara Roberts                                                            Debtor
c/o Renee Britt
36259 Bluff Heritage Avenue
Geismar, LA  70734

Hon. James L. Henley, Jr.                                      Chapter 13 Trustee
Post Office Box 31980
Jackson, MS 39286-1980

Edward Ellington, Judge

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** came before the Court on the *Order to Show Cause* (Dkt. #85) entered by

the Court on August 22, 2016, the *Response to Order to Show Cause* (Dkt. #88) filed by Patrick C.

Malouf and Porter & Malouf, P.A.;  *Plaintiff's Reply to Defendants' Response to Order to Show

Cause* (Dkt. #91) filed by James L. Henley, Jr., Chapter 13 Trustee; and *Rebuttal to Plaintiff's Reply

on Order to Show Cause* (Dkt. #93) filed by Patrick C. Malouf and Porter & Malouf, P.A.  Having

considered same, the Court finds that the above-styled case should be converted to a Chapter 7 on

the *Order to Show Cause.*

## FINDINGS OF FACT[2]

The specific matter before the Court is the *Order to Show Cause* (Dkt. #85) entered by the

---

[2]These findings of fact and conclusions of law constitute the Court's findings of fact and
conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent any of
the following findings of fact are determined to be conclusions of law, they are adopted, and shall
be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law
are determined to be findings of fact, they are adopted, and shall be construed and deemed, as
findings of fact.

Court on August 22, 2016, in which the Court ordered the parties[3] to appear to show cause why the above-styled case should not be converted to a Chapter 7 pursuant to the reasons expressed in the *Memorandum Opinion* (Adv. Dkt. #26) (Opinion I) issued contemporaneously on August 22, 2016, in Adversary Proceeding No. 1500051EE. For the purposes of this Opinion, the Court will briefly state the facts. For a more detailed explanation of the facts see *Henley v. Malouf, et. al. (In re Roberts),* 556 B.R. 266 (Bankr. S.D. Miss. 2016).

On September 4, 2002, a complaint was filed in the Circuit Court for the First Judicial District of Hinds County, Mississippi, styled *Pate, et al. v. Minnesota Mining & Manufacturing Comp., et al.* (Civil Action No. 25-CI-1:02-01140) (Hinds County Action). The Hinds County Action was filed by ninety-three (93) plaintiffs, one of whom was William S. Roberts. Patrick C. Malouf and Porter & Malouf, P.A. (collectively, Malouf) filed the Hinds County Action as counsel for William S. Roberts.

On October 22, 2003, William S. Roberts (Debtor) and his wife, Sara A. Roberts, (collectively, Debtors) filed a joint petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code. James L. Henley, Jr. (Trustee) was appointed the Chapter 13 Trustee. Neither the Debtor's *Schedules*[4] (Schedules) nor the *Statement of Financial Affairs*[5] disclosed that the Debtor was a plaintiff in the Hinds County Action.

---

[3]The Show Cause was issued to Mrs. Roberts and her attorney (James E. Renfroe) and to the attorneys (James L. Henley, Jr., Patrick C. Malouf, John H. Dollarhide, and J. Mitchell Carrington) participating in Adversary Proceeding No. 1500051EE.

[4]*Schedule B - Personal Property*, Case No. 0306146EE, Dkt. #4, p. 5 of 28, Line 20, Oct. 29, 2003.

[5]*Statement of Financial Affairs,* Case No. 0306146EE, Dkt. #4, p. 23 of 28, Question 4a, Oct. 29, 2003.

The *Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders* (Dkt. #12) (Confirmation Order) was entered on January 7, 2004. Attached to the Confirmation Order is the Debtors' *Chapter 13 Mini-Plan* (Confirmed Plan). In the Debtors' Confirmed Plan, the Debtors state that their unsecured creditors hold claims totaling approximately $47,872.00, and that they are paying zero (0) to their unsecured creditors.[6]

The Debtors completed their plan payments in January of 2007. The Trustee filed his *Final Report and Account* (Dkt. #32) (Final) on June 20, 2007. The Final shows that a total of $57,831.93 in allowed unsecured claims were filed in the Debtors' case and that zero (0) was paid to the allowed unsecured creditors. Further, the Final shows that the Debtors received a refund in the amount of $1,133.31.[7] On June 22, 2007, the *Discharge of Debtor After Completion of Chapter 13 Plan* (Dkt. #33) and the *Final Decree/Order Closing Case* (Dkt. #34) were entered.

At some point during the pendency of the bankruptcy case, the Hinds County Action was settled by Malouf. On March 5, 2007, an *Agreed Order of Dismissal of All Claims by Plaintiffs*[8] was entered in the Hinds County Action. The order dismissed the Hinds County Action with prejudice.

On May 27, 2015, the Trustee filed a *Motion to Reopen Chapter 13 Case* (Dkt. #72) because the Trustee had obtained information that the Debtor, William S. Roberts, had settled an undisclosed personal injury lawsuit during the pendency of his Chapter 13 case. The *Order on the Trustee's Motion to Reopen Chapter 13 Case [Dkt. No.: 72]* (Dkt. #73) was entered on June 1, 2015.

---

[6]*Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders,* Case No. 0306146EE, Dkt. #12, p. 3.

[7]*Final Report and Account*, Case No. 0306146EE, Dkt. #32, pp. 1-3, June 20, 2007.

[8]*Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief,* Adv. Case No. 1500051EE, Dkt. #7, Exhibit 4, Aug. 6, 2015.

An adversary proceeding was commenced on July 31, 2015, with the filing of the *Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief* (Adv. Proc. No. 1500051EE; Adv. Dkt. #1) by the Trustee. While not styled as amended, the Trustee filed an amended complaint on August 6, 2015, titled *Complaint for Turnover of Property, Declaratory Judgment and Equitable Relief* (Adv. Dkt. #7) (Amended Complaint). Malouf is the only defendant in the Amended Complaint.

In the Amended Complaint, the Trustee alleged that the Hinds County Action was property of the Debtors' bankruptcy estate; that Malouf's representation of the Debtor was not approved by this Court; and that the settlement entered into by Malouf on the Debtor's behalf was never approved by this Court and is therefore void. Consequently, the Trustee requested that the Court order Malouf to turnover any and all settlement funds it received on behalf of the Debtor, including attorneys' fees and expenses, to the Trustee.

Malouf filed a *Motion to Dismiss* (Adv. Dkt. #18) (Motion) on October 30, 2015. In the Motion, Malouf alleged that the Amended Complaint should be dismissed pursuant to several subsections of Federal Rule of Bankruptcy Procedure 7012.[9] Malouf contended that the Amended Complaint should be dismissed: (1) under Rule 12(b)(1) for lack of subject matter jurisdiction; (2) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and (3) Rule 12(b)(7) for failure of the Trustee to join all of the settling defendants in the Hinds County Action.

On August 22, 2016, the Court entered its Opinion I on Malouf's motion to dismiss the adversary proceeding in which the Court:

---

[9]Federal Rule of Civil Procedure 12 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012. For purposes of this Opinion, the Court will refer to Rule 7012 as Rule 12.

1.  Granted the Motion to Dismiss as to the Trustee's claim under 11 U.S.C. § 327;[10]

2.  Found that the Trustee had standing to pursue the claim against Malouf, and therefore, Malouf's request to dismiss the complaint was denied;

3.  Found that even though Malouf was not required to be approved as special counsel for the Debtor pursuant to § 327, Malouf was not free from Court oversight and must comply with § 329 and § 330;

4.  Found that the Trustee has a plausible cause of action under § 521 and under Federal Rule of Bankruptcy Procedure 9019; and

5.  As for § 542, the Court found that the Trustee did not have the authority to compel the turnover of the settlement funds.  The Court did find, however, that a Chapter 7 trustee clearly has the authority to require a turnover of the settlement funds.  Consequently, the Court deferred ruling on the Motion to Dismiss as to § 542 pending its decision on whether the case should be converted to a Chapter 7.

*In re Roberts*, 556 B.R. at 284.

On August 22, 2016, the Court entered the *Order to Show Cause* (Dkt. #85) (Show Cause). In the Show Cause, the Court ordered Mrs. Roberts and the attorneys to appear to show cause why the above-styled case should not be converted to a Chapter 7.  On September 12, 2016, Malouf filed its *Response to Order to Show Cause* (Dkt. #88) (Malouf's Response) in which Malouf asserts that due to the Debtor's death, § 1307(g) prohibits the case from being converted to a Chapter 7 because the Debtor's estate cannot qualify as a debtor under Chapter 7.  Malouf further asserts that since the Debtor cannot be a debtor under Chapter 7, his case cannot be further administered as provided for in Federal Rule of Bankruptcy Procedure 1016.[11]  Malouf also asserts that while the Debtor and Mrs. Roberts filed a joint petition under § 302(a), their estates were not consolidated, and therefore, the

---

[10]Here after, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[11]Here after, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

Debtor's personal injury claim was not property of Mrs. Roberts' estate.

On October 3, 2016, the Trustee filed *Plaintiff's Reply to Defendants' Response to Order to Show Cause* (Dkt. #91) (Trustee's Response).  In the Trustee's Response, the Trustee asserts that Malouf is not a party in interest and lacks standing to object to the conversion of the case.  The Trustee further disagrees with Malouf's interpretation of § 1307(g), Rule 1016 and § 302.

A hearing on the Show Cause was held on September 12, 2016.  The Court subsequently set a briefing schedule, and once the final brief was filed, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I.  Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E) and (O).

### II.  Standing of Malouf

The Trustee asserts that Malouf lacks standing to object to the conversion of the Debtors' case to a Chapter 7.  The Court finds that for the purposes of the Show Cause, the Court will address Malouf's arguments in response to the Show Cause.  While Malouf is not a party in the regular case,[12] Patrick C. Malouf was one of the parties to whom the Show Cause was addressed and

---

[12]In bankruptcy practice, a *case* is a term of art and refers to the adjustment of a debtor's debts under a Chapter 13 or the reorganization or liquidation of a debtor, most commonly under Chapter 11 or 7.  *See* 11 U.S.C. § 301.  A case is distinguished from an adversary proceeding which is filed under Federal Rule of Bankruptcy Procedure 7001.  *In re S. Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992).  An adversary proceeding is a free-standing lawsuit which is totally separate from the bankruptcy case.  *Plan 4 College, Inc. v. Gregus (In re Plan 4 College, Inc.),* Case No. 09-17952, 2009 WL 3208285, at *2 (Bankr. D. Md. Sept. 24, 2009).

Malouf was the only party to file[13] a response to the Show Cause.  Consequently, the Court will consider Malouf's Response to the Show Cause.

### III.  Does the Debtor qualify as a debtor under the Bankruptcy Code?

The Court completely agrees that the Bankruptcy Code's definitions of *debtor* and *person* do not include a decedent's estate, and therefore, a decedent's estate may not file a bankruptcy petition.  *In re Estate of Patterson,* 64 B.R. 807, 808 (Bankr W.D. Tex. 1986).  The situation before the Court, however, does not involve a decedent's estate attempting to file a bankruptcy petition.  Instead, the case before the Court involves the Trustee acting on behalf of the bankruptcy estate of a deceased debtor to reopen a bankruptcy case.

Several courts have addressed the issue of the reopening of a bankruptcy case of a deceased debtor.  In *In re Walters*, 113 B.R. 602 (Bankr. D.S.D. 1990), the court addressed whether a deceased debtor's Chapter 11 case could be reopened in order to avoid liens.  The Internal Revenue Service argued that the case could not be reopened because the deceased debtor could not qualify as a person under § 101[14] of the Bankruptcy Code.

The *Walters* court discussed the tension between § 350(b)[15] and Rule 1016 and held that if

---

[13]The Court received a letter from Mrs. Roberts' daughter, Renee Britt, stating that her mother was in ill health and could not attend the Show Cause hearing.  Since Ms. Britt is not an attorney and cannot represent Mrs. Roberts, the letter was placed in correspondence.  The Debtors' attorney of record is James E. Renfroe.  Mr. Renfroe, however, did not file a response to the Show Cause.

[14]"(13)  The term 'debtor' means person or municipality concerning which a case under this title has been commenced."  11 U.S.C. § 101(13).

[15]"(b)  A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).

the court simply looked to the definition of person in § 101(41),[16] the court would be ignoring the unambiguous language of Rule 1016 that under limited circumstances, a bankruptcy case may be administered despite the death of the debtor. The *Walters* court ultimately found that the case could be reopened because nothing in the Bankruptcy Code expressly requires a debtor to once again qualify as a debtor when seeking to reopen his case.

> Where two statutes are capable of coexistence, it is the court's duty, absent clearly expressed Congressional intent to the contrary, to regard each as effective. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880, 81 L.Ed. 2d 815 (1984). Nowhere in either the Bankruptcy Code or Bankruptcy Rules is there express language requiring a reopened case to qualify as a debtor. Therefore, reopening a case under 11 U.S.C. § 350(b) and continuing case administration despite death under Bankruptcy Rule 1016 are both deemed effective.

*In re Walters,* 113 B.R. at 605; *see also In re Kennedy,* 08-81687, 2016 WL 6649200, at *5 (Bankr. M.D.N.C. Apr. 6, 2016); *In re Henson,* No. 06-80191, 2013 WL 5417197 (Bankr. E.D. Okla. Sept. 26, 2013); *In re Mobley,* No. 99-92579, 2004 WL 377679 (Bankr. C.D. Ill. Mar. 1, 2004).

In the case at bar, when the Debtors filed their bankruptcy petition, they qualified as debtors under the Bankruptcy Code. The Debtors completed their plan payments and received their discharge. After the Debtor died, the case was reopened by the Trustee in order to administer an undisclosed asset. Following the reasoning of the *Walters* court, this Court also "refuses to don blinders and look only at whether the [debtor] qualifies as a 'debtor' to file a bankruptcy petition."[17] The Debtors qualified at the time they filed bankruptcy and nothing in the Bankruptcy Code requires the Debtors to re-qualify now that their case has been reopened to administer an undisclosed asset

---

[16]"(41) The term 'person' includes individual, partnership, and corporation, but does not include governmental unit, . . . ."

[17]*In re Walters,* 113 B.R. at 606.

of the bankruptcy estate.

### IV.  Is conversion to a Chapter 7 permitted?

Malouf argues that § 1307(g) prohibits the conversion of the Debtors' bankruptcy case because

> [a] deceased person's estate does not qualify as a 'person,' and thus it is not qualified to be a Chapter 7 debtor.  Therefore, it appears that a Chapter 13 debtor, who has died, cannot have his case converted to a Chapter 7 because the estate cannot be a debtor under Chapter 7 and therefore cannot pass § 1307(g)'s muster.

*Response to Order to Show Cause,* Case No. 0306146EE, Dkt. #88, p. 2, (Sept. 12, 2016) (citations omitted).  Malouf further argues that the Court should dismiss the portion of the bankruptcy case and adversary proceeding that pertain to the Debtor because he also no longer qualifies as a Chapter 13 debtor.  *Id.* at 3, n.4.

Section 1307 applies to the conversion or dismissal of a Chapter 13 case.  It provides in pertinent part:

> (a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.
>
>           . . . .
>
> (g) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C.A. § 1307.

One case relied upon by Malouf in support of its position that § 1307(g) prohibits the conversion of the Debtors' case to a Chapter 7 is *In re Spiser,* 232 B.R. 669 (Bankr. N.D. Tex. 1999).  In *Spiser*, a husband and wife filed a joint petition under Chapter 13.  Before their plan was confirmed, the husband died, and the wife died shortly thereafter.  The debtors' attorney filed a

motion to convert the case to a Chapter 7, which the court granted. Several months later, the Chapter 7 trustee filed a motion to reconsider the order converting the debtors' case to a Chapter 7 stating that the estate(s) of a dead person cannot be a debtor under Chapter 7.

In setting aside the order of conversion, the court held that "[w]ith the deaths of both [debtors], there was no 'individual' remaining in the Chapter 13 case; only the probate estates of [the debtors] remained. A probate estate is not a 'debtor' eligible to convert the case to Chapter 7 under § 1307(a)." *In re Spiser,* 232 B.R. at 673.

The court then looked to Rule 1016. Rule 1016 provides for the death or incompetence of a debtor. Rule 1016 provides:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

Fed. R. Bankr. P. 1016.

The court in *Spiser* found the term *further administration* to imply "that the case would be carried to its normal conclusion with payments to the creditors as provided in the confirmed plan, rather than conversion of the case to Chapter 7." *In re Spiser,* 232 B.R. at 673. For all of these reasons, the *Spiser* court set aside the order of conversion and dismissed the case.

The Court finds that *Spiser* can be distinguished from the case at bar on several grounds. In *Spiser*, both of the debtors died early during the pendency of their bankruptcy case. The court found that therefore, "there was no 'individual' remaining in the Chapter 13 case; only the probate estates

of [the debtors] remained."[18]  In the case at bar, only the Debtor has died.  Mrs. Roberts is still living and no one has challenged her authority to act as the Debtor's representative.  Also, unlike the debtors in *Spiser,* the Debtors completed all of their plan payments.  The only remaining issue is the distribution of the settlement funds to unsecured creditors.

Further, this is not a case where a debtor or a probate estate is seeking to have a case converted to a Chapter 7.  Rather, the Court entered the Show Cause to determine whether it is in the best interests of the creditors for the Court to *sua sponte* convert the Debtors' case to a Chapter 7.  "The court may invoke Section 1307(c) *sua sponte.  In re Elliott,* 506 Fed. Appx. 291 (5th Cir. 2013)."  *In re Yuen,* No. 13-30249, 2013 WL 3430768, at *3 (Bankr. S.D. Tex. 2013).  For these reasons, the Court finds that Malouf's reliance on *Spiser* is misplaced.

Malouf also cites other cases outside of the jurisdiction of the Court of Appeals for the Fifth Circuit in support of its position that § 1307 and Rule 1016 prohibit the conversion of the Debtors' case.  The Court might be convinced to follow the rather narrow interpretation of Rule 1016 found in the *Spiser* opinion and in the other cases cited by Malouf were it not for the cases of *Querner v. Querner (In re Querner),* 7 F.3d 1199 (5th Cir. 1993) and *Brown v. Sommers (In re Brown),* 807 F.3d 701 (5th Cir. 2015).

In *Querner*, a Chapter 13 petition was filed by the legal guardian of the debtor.  The debtor died shortly thereafter and before the plan was confirmed.  The case continued and was eventually closed by the court.  Despite the case being closed, the bankruptcy court continued to exercise jurisdiction over disputes between the co-executors of the deceased debtor's Chapter 13 probate estate.  The Fifth Circuit "held that a bankruptcy court correctly exercised its discretion under

---

[18]*In re Spiser*, 232 B.R. at 673.

Bankruptcy Rule 1016 to continue jurisdiction over a Chapter 13 debtor's property after the debtor's death; however, the bankruptcy court improperly exercised jurisdiction over the probate estate of the deceased debtor after the Chapter 13 case was closed."[19]

In *Brown*, the debtor was a successful surgeon who filed a Chapter 11. According to the Fifth Circuit, the "[d]ebtor engaged in significant misconduct during his bankruptcy case"[20] which led to the appointment of a Chapter 11 trustee. The debtor died shortly after the trustee was appointed effectively intestate.

Citing § 1112(b)(1)[21] and Rule 1016, the Fifth Circuit stated that "[i]n response to Debtor's death, the . . . Bankruptcy Court converted Debtor's bankruptcy case to a liquidation under Chapter 7 of the Bankruptcy Code." In denying the non-debtor wife's claim for an exemption under Texas law, the Fifth Circuit again cited to Rule 1016: "Rule . . . 1016 further supports our conclusion. That rule provides that, if the debtor passes away during the pendency of a bankruptcy case, 'the estate shall be administered and the case concluded in the same manner, so far as possible, *as though the death . . . had not occurred.*"[22] The Fifth Circuit went on to find that denying the wife's claim of exemption "would be most consistent with Rule 1016's admonition to administer the case as if

---

[19]Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 269.1, at ¶ 10, Sec. Rev. June 9, 2004, www.Ch13online.com.

[20]*In re Brown,* 807 F.3d at 704.

[21]Section 1112(b)(1) and § 1307(c) both provide that a Chapter 11 or Chapter 13 may be converted to a Chapter 7 *for cause.* The major difference between the two sections is that § 1112(b)(1) provides that the court *shall* convert while § 1307(c) provides that the court *may* convert.

[22]*In re Brown,* 807 F.3d at 708-09.

the Debtor had never passed away."[23]

The Fifth Circuit's holding in *Querner* and its interpretation of the phrase *further administration* in *Brown* do not support the *Spiser* court's[24] narrow interpretation of *further administration.* Instead, the Fifth Circuit found that *further administration* under Rule 1016 allowed a deceased debtor's case to be converted from a Chapter 11 to a Chapter 7 and proceed to a conclusion. Considering the Fifth Circuit's application of Rule 1016 in *Brown* and *Querner*, the fact that the Debtor has died does not prevent the Debtors' case from being converted to a Chapter 7 for further administration of the settlement funds.

The Court finds that in its discretion, the Court may convert the Debtors' case from a Chapter 13 to a Chapter 7 if the Court finds that it is in the best interest of the creditors.[25] Considering that unsecured creditors were paid zero (0) in the Debtors' Chapter 13 case, the Court finds that the Court has the authority to *sua sponte* convert the Debtors' case to a Chapter 7 so that the settlement funds can be further administered.

## V. Was the Debtors' case consolidated pursuant to § 302(b)?

Malouf believes that because the Debtors' case was not consolidated, Mrs. Roberts has no interest in the Debtor's settlement proceeds. As noted, the Debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code. Section 302 permits joint petitions of spouses, and provides:

---

[23]*Id.* at 709.

[24]The Court notes that *Spiser* was entered in 1999. The Fifth Circuit entered *Brown* in 2015.

[25]*In re Yuen,* 2013 WL 3430768, at *3.

§ 302.  Joint Cases.

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

(b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.

11 U.S.C. § 302.

A case filed under § 302(a) is jointly administered.[26] Section 302(b) addresses consolidation of a jointly administered case. *Collier on Bankruptcy* explains the distinction between § 302(a) and § 302(b):

> Section 302(b) of the Code allows the court, after the commencement of a joint case pursuant to section 302(a), to "determine the extent, if any, to which the debtors' estates shall be consolidated." Consolidation, as described in the legislative history to section 302(b), is the combining of the assets and liabilities of the two estates into a single pool to pay creditors. Consolidation should be distinguished from joint administration, described above. While the substantive rights of the creditors of the different debtors' estates may be affected by consolidation, the rights of creditors of each debtor to that debtors' property are not affected by joint administration. In short, the filing of a joint petition does not result in the automatic substantive consolidation of the two debtors' estates.
>
> To consolidate under section 302(b), the debtors must be spouses. In determining whether the estates of the spouses should be consolidated, a court will examine the extent of jointly held property and the amount of jointly owned debts. In cases involving joint petitions, the extent of consolidation will depend largely upon whether either spouse owns substantial non-exempt separate property, or community property that is solely liable for the debts of one spouse. If no separate or restricted community property exists, and the court finds that the affairs of the two spouses are so intermingled that their respective assets and liabilities cannot be separated, the estates may be fully consolidated, and any community property made available in distribution to the creditors of both spouses who hold community claims.

---

[26]Rule 1015(b) provides for joint administration of a joint case:  "If a joint petition . . . [is] pending in the same court by . . . a husband and wife, . . . the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b).

. . . .

> Ultimately, the court must be persuaded that the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition and that substantive consolidation should be invoked "sparingly" when any creditor or debtor objects to its use.

2 *Collier on Bankruptcy* ¶ 302.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnotes omitted).

In 1985, the Court in *In re Gallo,* 49 B.R. 28 (Bankr. N.D. Tex. 1985) had before it the issue of stacking exemptions by joint debtors in a Chapter 7, however, the court also addressed the issue of consolidation of a joint bankruptcy case.  The court found that "[i]n this district formal orders of consolidation customarily are not entered in husband and wife cases.  They are deemed to be consolidated for all purposes and it is only in the rare instance where one of the spouses has separate property and separate debts will the estates be administered separately."[27]

The *Gallo* holding is in line with Keith M. Lundin & William H. Brown's treatise on Chapter 13, *Chapter 13 Bankruptcy*.  In addressing the practical application of § 302(b), Judge Lundin and Judge Brown state:

> The filing of a joint Chapter 13 petition by a husband and wife does not automatically result in substantive consolidation of the two debtors' estates.  As explained in 11 U.S.C. § 302(b), "after the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated."  It is not routine in Chapter 13 practice for the debtor or trustee to move for substantive consolidation after the filing of a joint petition.  Bankruptcy courts do not review every joint Chapter 13 petition filed by a husband and wife to determine whether the estates should be consolidated.  Routinely, the joint petition is treated as a single case, and the assets and liabilities are administered as if substantively consolidated. In most Chapter 13 cases, the debts and assets of each spouse will be so similar that substantive consolidation has no adverse effect on creditors.  An occasional reported decision reveals a local rule or practice that

---

[27]*In re Gallo,* 49 B.R. at 30.

substantively consolidates jointly filed Chapter 13 cases.

Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 7.1, at ¶ 4, Sec. Rev.

Mar. 4, 2009, www.Ch13online.com (footnotes omitted).

As acknowledged by Judge Lundin and Judge Brown and like the *Gallo* court, this Court has never entered a formal order consolidating the bankruptcy estates of a husband and wife case. Instead over the past thirty-plus years, the bankruptcy bar has proceeded as if joint cases were consolidated even though formal orders of consolidation have not been entered.

Another case involving exemptions, however, finds that consolidation must be ordered. The court in *In re Bippert,* 311 B.R. 456 (Bankr. W.D. Tex. 2004), addressed the issue of consolidation of a joint Chapter 13 bankruptcy case. In *Bippert*, the bankruptcy court analyzed the Eleventh Circuit's opinion in *Reider v. FDIC (In re Reider),* 31 F.3d 1102 (11th Cir. 1994), and found its ruling persuasive:

> The Eleventh Circuit, in a careful analysis, noted first and foremost that substantive consolidation is not presumed, not even in a joint case filed by a married couple pursuant to section 302. Instead, it can only be ordered when, after an examination of the evidence, the court finds that there is a substantial identity between the assets, liability, and handling of financial affairs between the spouses, and that, based on the equities, harm would result if consolidation were not ordered that would outweigh the harm that would occur as a result of the consolidation. Issues such as fraud or bad faith on the part of the debtors may enter into the calculus, but so also would prejudice to creditors if consolidation were ordered (or not ordered). The court described the burden on the moving party as "exacting" and warned that substantive consolidation should be invoked "sparingly" if the request is met with opposition from either a creditor or a debtor. *Reider,* 31 F.3d at 1108–09. Finally, the court underscored that "[g]reat care must be taken to avoid confusion between the attributes of joint administration and indicia supporting substantive consolidation. *The filing of a joint petition by a husband and wife does not result in the automatic substantive consolidation of the two debtors' estates.*" *Id.* at 1109 (emphasis added). The conduct of joint spouses in jointly administering their estate in bankruptcy should, in the view of the court, be accorded "relatively little weight." *Id.*

*In re Bippert*, 311 B.R. at 463–64.

The Eleventh Circuit in *Reider* established the following standard to be used when determining whether a joint bankruptcy case should be consolidated:  (1) is there a substantial identity between the debtors' assets, their liabilities and their handling of their financial affairs? (2) does any harm caused by not consolidating a joint case outweigh any harm caused by consolidations? and (3) is there fraud or bad faith on the part of the debtors?

Looking to the first factor, the Court examined the Debtors' schedules to determine whether there was substantial identity between the Debtors' assets and liabilities.  All debts listed on their Schedules are listed as joint debts, including a joint liability to the Internal Revenue Service for federal income taxes.  None of the Debtors' liabilities were business debts of either party, but instead, were all consumer debts.  The Debtors list one checking account with Union Planters Bank. The Debtor's source of his income was Social Security Benefits, and Mrs. Roberts' source of income was Supplemental Security Income from the Social Security Administration.  The *Order Upon Debtor Directing Payments to Trustee* (Dkt. #6) (Wage Order) was issued to the both Debtors because they were personally sending their plan payments to the Trustee (as opposed to a case where the Wage Order is issued to an employer).  Consequently, the Court finds that there was a substantial identity between the Debtors' assets and liabilities which favor consolidation of their bankruptcy estates.

Skipping to the third factor, the Court finds if not fraud, bad faith at a minimum, on the part of the Debtor for failing to list his pre-petition cause of action in his Schedules.  The cause of action was clearly property of the Debtor's bankruptcy estate.  When Malouf settled the lawsuit during the Debtor's Chapter 13 case, the failure to obtain Court approval of the settlement, and the subsequent payment of attorneys' fees and expenses and the disbursement of funds to the Debtor are all

problematic–not only for the Debtor, but also for Malouf.[28]  Consequently, the existence of fraud and/or bad faith favor consolidation of the Debtors' bankruptcy estates.

As for the second factor, the Court must look to whether harm would be caused if the bankruptcy estates are consolidated which would out weight the benefit of consolidating the bankruptcy estates.  The Debtors' Schedules list all of their debts as joint debts, therefore, the Court does not see where any creditor would be prejudiced if the Debtors' bankruptcy estates are consolidated.  If the bankruptcy estates are consolidated and the settlement funds are paid over to a Chapter 7 trustee, there would be a distribution to all of the Debtors' unsecured creditors.  Since the unsecured creditors were paid zero in the Debtors' Chapter 13 case, the creditors will not suffer any harm in the consolidation of the Debtors' bankruptcy estates.  The lack of prejudice or harm to the creditors favor consolidation of the Debtors' bankruptcy estates.

The Court notes, however, that a party in interest has not filed a motion to consolidate. While § 302(b) states that "the court *shall* determine"[29] whether a joint case shall be consolidated, in its research, the Court was unable to find authority which states that a court may *sua sponte* order consolidation.  For that matter, neither was the Court able to find authority stating that the Court is prohibited from *sua sponte* ordering consolidation.

Since this is a matter of first impression for the Court and since parties in interest have not

---

[28]*Wischan v. Adler (In re Wischan),* 77 F.3d 875, 877 (5th Cir. 1996) ("The fact that the causes of action may have borne fruit in settlement or judgment after commencement of the bankruptcy case does not transform them into post-petition property of the debtor–excluded from the bankruptcy estate. . . ."); *Thomas v. Burke (In re Burke),* 150 B.R. 660, 663 (Bankr. S.D. Tex. 1993) ("By its very terms, § 542(a) allows a Chapter 7 trustee to obtain on an action for turnover either a return of the property itself or the property's value."

[29]11 U.S.C. § 302(b) (emphasis added).

been given an opportunity to respond to a motion to consolidate the Debtors' bankruptcy estates, the Court will reserve ruling on the issue of consolidation of the Debtors' bankruptcy estates until the case is converted to a Chapter 7 and a Chapter 7 trustee appointed.

## CONCLUSION

When the Debtors filed their bankruptcy case, they qualified as debtors under the Bankruptcy Code. Since neither the Bankruptcy Code nor the Rules require a debtor to re-qualify as a debtor when a case is reopened, the Court finds that the Debtors are qualified to be debtors under the Bankruptcy Code.

After the death of a debtor, Rule 1016 permits the further administration of a case if it is in the best interest of the parties. In *Brown,*[30] the Fifth Circuit approved the conversion to a Chapter 7 of the debtor's case after his death. Applying *Brown,* the Court finds that it is in the best interest of the creditors for the Debtors' bankruptcy case to be further administered and the case concluded "*as though the death [of the Debtor] had not occurred.*"[31]

It is clear that the Hinds County Action was filed pre-petition and was property of the Debtor's bankruptcy estate. It is also undisputed that not only did the Debtor fail to disclose the Hinds County Action in his Schedules, but he also failed to disclose the settlement of the Hinds County Action while his Chapter 13 case was pending. In addition, it is undisputed that Malouf disbursed property of the bankruptcy estate without Court approval.[32] The Debtor and Malouf

---

[30]*Supra* at 15.

[31]*In re Brown,* 807 F.3d at 709.

[32]In Malouf's Response, Malouf states that "Malouf respectfully reserves the opportunity to file the appropriate applications and/or motions for approval *nunc pro tunc* of its representation of Mr. Roberts, the settlements obtained in the Hinds County Action, and its attorney's fees and expenses, and notes that it plans to do so without delay." Contrary to this statement, Malouf has not filed an

converted property of the Debtor's bankruptcy estate to their own use to the detriment of the unsecured creditors.  The Court finds that at a minimum, the Debtor has abused the bankruptcy process.[33]

As the Court stated in its Opinion I in this case, "'[a] debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for [his] own benefit.'"[34]  This is exactly what the Debtor in this case did.  Even when Mrs. Roberts reopened the case to disclose the settlement of her cause of action, the Debtor's settlement was not disclosed to the Court, the Trustee, or the Debtor's unsecured creditors.  This Court will not permit a dishonest debtor to reap a windfall by failing to disclose a cause of action.[35]  Consequently, the Court finds that the Debtors' case should be converted to a Chapter 7.

In this Court, formal orders of consolidation of joint debtors' bankruptcy estates are not entered.  In reviewing the *Reider*[36] factors for determining whether consolidation is in the best interest of parties in interest, it appears that consolidation is warranted.  Since no party in interest has filed a motion to consolidate the Debtors' bankruptcy estates and it is unclear whether the Court can *sua sponte* order consolidation, the Court will, however, reserve ruling on the issue of consolidation of the Debtors' bankruptcy estates until the case is converted to a Chapter 7 and a

---

application to be employed nor a motion to approve the settlement of the Hinds County Action.

[33]*See Smith v. Henley,* 548 B.R. 724, 730 (S.D. Miss. 2016) (a bankruptcy court may convert a case when the debtor has abused the bankruptcy process or acted in bad faith).

[34]*Chartschlaa v. Nationwide Mutual Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008), *cert. denied*, 555 U.S. 1213 (2009) (citation omitted).

[35]*Henley v. Malouf (In re Roberts),* 556 B.R. 266, 284 (Bankr. S.D. Miss. 2016).

[36]*Supra* at 19.

trustee is appointed.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this Opinion will be entered in accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**